Bernard Ryan, P. J.
In this suit claimant seeks to recover the value of land appropriated by the State of New York for the purposes of development of the Niagara Power project. The proceeding before us is a motion to examine before trial the agents and employees of the Power Authority. It appears that claimant’s attorney, taking advantage of subdivision 1 of section 16 of the Court of Claims Act has served upon the defendant a notice, and a supplementary notice as well, of sales of properties which he deems comparable to the real property of his client, part of which has been appropriated. Listed as No. 15 upon the supplementary notice is a deed by one Rudolph Gold and others to the Power Authority dated July 24, 1958 and duly recorded. *1007 The affidavit in support of the motion recites that the revenue stamps affixed to the deed indicate the consideration paid for 2.6 acres to have been $70,000 but states that deponent has been informed that, in addition to such consideration, the grantors were permitted to remove a building then existing on the premises conveyed and that, as further consideration, there was conveyed to them by the Power Authority a parcel of 4.532 acres in the near vicinity of the property appropriated from them. The affidavit further alleges that the Power Authority, at its expense, provided a railroad siding to the plot deeded to the Golds.
Continuing, the affidavit gives the date of the last-mentioned deed as September 24, 1959, recites the book and page of its public record, describes it as a quitclaim deed but states the deponent has been unable to ascertain whether or not a petition for condemnation of the property acquired from the Golds had been filed and whether or not an action against them was commenced.
Any doubt about the last two points is resolved by the answering affidavit of the special Assistant Attorney-General assigned to the defense of appropriation claims arising out of the Niagara Power project. He avers that, pursuant to a resolution adopted by the trustees of the Power Authority, and on or about March 26, 1958 notice of an application and petition for judgment of condemnation for public use was served upon the Golds; that lis pendens was filed; that, before and after, the notice and application for judgment of condemnation, negotiations with the Golds for the acquisition of their lands continued; that such negotiations resulted in an agreement of purchase and that after its execution the condemnation proceedings instituted were dismissed by an order of a Justice of the Supreme Court based upon a stipulation of the parties. He states that the order was duly entered on October 30,1958. These statements are not controverted. The petition, lis pendens, and order of discontinuance being matters of record, are available to claimant.
As a more particular ground for the relief sought herein the affidavit of claimant’s counsel, which is the only one presented in support of this application, recites that the property appropriated in part from the claimant was a junkyard consisting of slightly less than two acres upon which was a building 27 by 82 feet. The affidavit continues with this recital: “ That
deponent has personally and with the assistance of various appraisers in the City of Niagara Falls, County of Niagara and State of New York, attempted to assemble lists of comparable sales in order to present the claimant’s cause for adjudication *1008 by this Court, and that such examination primarily reveals the sale of vacant property for industrial purposes; that deponent was unable to discover or ascertain sales of comparable properties, to wit: those utilized for the operation of a junkyard.” And further with this statement: “ That due to the lack of available comparable sales of property devoted to the operation of junkyards, it is the opinion of deponent that this sale constitutes the most comparable sale in time and location available to the claimant, and therefore accurate and precise information as relates to consideration paid for material is necessary* in the preparation and presentation of the grantor’s cause of action.”
Although the affidavit does not tell us so directly the implication is that the Golds, too, operated a junkyard.
The point of view, presented by claimant’s attorney, that a junkyard is unique is not shared by counsel for the Power Authority who asserts that: “ A junkyard can be established, maintained and conducted with the same zoning classification as the property taken. The use might be considered to be special or unique but the property itself is not. ’ ’
In support of his contention that the property appropriated had unique attributes and that the rule against the admissibility of the details of transactions between the condemnor and third parties, relating to properties acquired for the same project as was the property in suit, should not be applied when this case comes to trial, claimant cites Langdon v. Mayor (133 N. Y. 628 [1892]). But the exception allowed in the Langdon case had its basis in the fact that only the City of New York was a prospective purchaser of wharfage easements which would be likely to enter the market. The State Power Authority did not need part of this claimant’s property because it was being operated as a junkyard. In the Niagara development it has acquired plots being utilized for various uses, residential and commercial as well as industrial.
We are mindful of Hopkins v. State of New York (276 App. Div. 945 [1950]), wherein the Appellate Division, Fourth Department, affirmed a judgment of this court entered upon an appropriation claim but said: “we are of the opinion that the agreements of adjustment do not constitute evidence of the price upon any sale, under the provisions of section 16 of the Court of Claims Act, and were improperly received upon the issue of the value of claimant’s property
*1009 However, claimant’s attorney sees in the more recent decision, Hewitt v. State of New York (27 Misc 2d 930, affd. 11 A D 2d 1079), a distinction from the rule applied in the Hopkins case and urges that distinction upon us. But in that instance Judge Easton of this court pointedly stated (p. 932): “We are not confronted here with acquisitions by the Power Authority pursuant to an agreement of adjustment. Such transactions would not constitute a sale, and would be inadmissible as evidence of comparable sales.”
What did confront the court in the Hewitt case was this: the Power Authority itself had included in its notice of proposed comparable sales recitals of four parcels which had been conveyed by individuals to Niagara Mohawk and which thereafter had been sold and conveyed to the State for the use of the Power Authority, condemnor, in a “package deed” which included many other parcels. The holding in favor of the claimant afforded the Hewitts the opportunity to ascertain if, in arriving at a total sales price in excess of $6,000,000, the parties to the agreement had fixed a separate sales price for each of the four parcels. The inquiry permitted had the objective of ascertaining the true value of the parcels listed by the defendant in its notice. The situation here is quite different. Claimant, not the defendant, has given notice.
In the case of Matter of Municipal Housing Auth. of City of Utica (271 App. Div. 184 [1946]), cited by Judge Easton, a special statute made competent and admissible the prices paid by the owners of premises situated within the appropriated area and, as well, the prices received by such owners from the condemnor. Even so there was a strong dissent by two Justices of the Fourth Department from the Appellate Division’s order reversing the decision of the County Court.
The enactment of section 16 of the Court of Claims Act and companion statutes was designed to give assistance in arriving at true market value in condemnation, or appropriation, proceedings. The legislation has not been an unmixed blessing as, in our experience, it has opened the door to the trial of collateral issues, thereby unnecessarily prolonging trials. But it has not eradicated the essential elements of market value, viz., a meeting of the minds of two contracting parties, each ready and willing, each acting under no compulsion but in the ordinary course of business, agreeing to exchange the ownership of a piece of real property. We deem citation of authorities on this point unnecessary.
*1010 Upon a review of the facts presented and of the arguments advanced, we do not find upon this application sound reason to vitiate a rule which would deny the admissibility of the details which might be elicited were the examination which claimant seeks permitted. Accordingly we deny the motion.

An apparent clerical error. We think this phrase was intended to read: “paid for it is material and necessary